Howell, J.
This is au action on a policy of insurance taken out, by plaintiff on a steamship, to run from New Orleans to the Rio Grande, and there navigate between Bagdad and Oamargo ; the defence to which is, that the ‘1 loss was caused by the master’s failure to employ a pilot' to navigate the vessel on coming upon pilotage ground, at the mouth of..the, Rio Grande, where custom and usage required .said vessel to be s.o nayi7' gated ; * * * and that the doings and actings of the master, and crew, at the time of, and after the loss, further occasioned said loss.’ ?.
Judgment was rendered in favor of the plaintiff for the amount of-the, policy, and defendant appealed. . . . . '.
The evidence shows that the master of the steamship took on at New, Orleans a pilot, who was a captain of a lighter used at, and was familiar,, with, the bar at the mouth of the Rio Grande, and who, upon arriving.;there, and after examination, informed the master that it was safe then, to cross, although the water on the bar was quite rough ; but after, pas-; sing over the shoal portion of the bar, the vessel struck some hidden-, object in the channel, supposed to be ananohor or a sunken vessel, whicR, broke one of the wheels, and caused the boat to sheer to the northward, and run on the bar on the Texas shore. In backing her 'off, the other, wheel was also disabled, and she drifted seaward upon the bar, broadside;, to the channel, where she became a wreck. ... ...
It is contended that the custom required the vessel to be put under i;h®.. charge of a licensed pilot in crossing the bar, and a large number of wib, nesses on each side were examined as to the existence of such a.custom ; but we think the preponderance of evidence is with plaintiff—that it ie; sufficient to place the vessel in charge of a pilot familiar, with, the bar, and channel, and in the habit of piloting sea-going vessels.across the bar, ,, and that the person employed by the master was such a pilot. The-, argument, that it is necessary, from the shifting nature of the-bar, for, the pilot to examine it daily, and that the pilot on this boat had been; absent a few weeks, does not seem to possess much force, as it appears, that the vessel was steered in the right channel. It seems, also, that one of defendant’s witnesses, who claims to be a licensed pilot, had his, .boat sunk in attempting to go out to plaintiff’s steamer on the occasion.
It is by no means satisfactorily shown that Bagdad was a well-appointed port, with regular pilots commissioned by public authority.
It is said, by some of the witnesses, that there are some “licensed pilots ” there, but the sources'from which they obtained license, if it be in any manner a formal license, are vague and irregular. Ve are left to, conjecture, in regard to the duties and authority of the captain of the port, and any established power to control the affairs óf the port, -.
The evidence is insufficient to establish such a custom as the defence relies on, and which it was incumbent on them to prove. 2 Green. Ev,,„ i 401.
When lost the boat was in charge of a pilot of established reputation and entiro competency—one of that class to which it was customary to intrust vessels in crossing the bar at the Rio Grande, although there were some of this class, who seem to have been favored in some way by some of. the *482 various authorities, which, existed from time to time in that and adjacent localities.
From the testimony of those who had the best opportunities of knowing, we think the master and crew did all in their power to avoid the loss.
Judgment affirmed, with costs.
Rehearing refused.